Chief William C. Watford Cottondale Police Department Post Office Box 398 Cottondale, Florida 32431
Dear Chief Watford:
You ask substantially the following question:
May the civil penalty imposed for traffic violations that is disbursed to the city pursuant to section 318.21, Florida Statutes, to fund local law enforcement automation be used to purchase law enforcement automobiles?
In sum:
The civil penalty imposed for traffic violations that is disbursed to the city pursuant to section 318.21, Florida Statutes, to fund local law enforcement automation may not be used to purchase law enforcement automobiles.
Section 318.21, Florida Statutes (1996 Supplement), provides a scheme for the distribution of civil penalties by county courts. The act states that "[a]ll civil penalties received by a county court pursuant to the provisions of this chapter shall be distributed and paid monthly [pursuant to the formula established by the act]."[1] Subsection (10) of the statute states:
"Twelve dollars and fifty cents from each moving traffic violation must be used by the county to fund that county's participation in an intergovernmental radio communication program approved by the Division of Communications of the Department of Management Services. If the county is not participating in such a program, funds collected must be used to fund local law enforcement automation and must be distributed to the municipality or special improvement district in which the violation occurred or to the county if the violation occurred within the unincorporated area of the county."
Prior to 1996, section 316.655(7), Florida Statutes (1995), provided:
"In addition to any other penalty provided for violation of the state uniform traffic control law pursuant to [chapter 316] or chapter 318, any county that [articipates in an intergovernmental radio communication program approved by the Division of Communications of the Department of Management Services may assess an additional surcharge of up to $12.50 for each moving traffic violation, which surcharge must be used by the county to fund that county's participation in the program."
This office, in Attorney General Opinion 94-38, stated that under the then-existing language of section 316.655, the use of the surcharge to fund a municipality's, rather than a county's, participation in an intergovernmental communication program was not authorized. The language of section 316.655 quoted above was deleted in 1996 by the same act that added language to section318.21, Florida Statutes (1996 Supplement), authorizing a municipality to use the surcharge for law enforcement automation.[2]
Where the Legislature has not defined words, the language should usually be given its plain and ordinary meaning; consideration, however, must be given not only to the literal and usual meaning of words but also to their effect and meaning on the objectives and purposes of the statute's enactment.[3] The term "automation" has been generally defined as "the technique of making an apparatus (as a calculating machine), a process (as of manufacturing), or a system (as of bookkeeping) operate automatically: the state of being operated automatically: automatically controlled operation of an apparatus, process, or system by mechanical or electronic devices that takes the place of human organs of observation, effort, and decision."[4]
The use of the term "automation" elsewhere in the Florida Statutes is generally in accordance with the above definition.[5]
An examination of the legislative history surrounding the 1996 legislation indicates that the Legislature sought to reinstate the provisions formerly contained in section 316.655.[6] While section318.21(10) is broader in that it authorizes the fees to be used by municipalities and special districts, nothing in the legislative history indicates an intent to authorize a law enforcement agency to expend such funds on automobiles.
In light of the above, I am of the opinion that the civil penalty imposed for traffic violations that is disbursed to the city pursuant to section 318.21, Florida Statutes, to fund local law enforcement automation may not be used to purchase law enforcement automobiles.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] Cf., Art. V, s. 20(c)(8), Fla. Const. (fines and forfeitures received from violations of ordinances or misdemeanors committed within a county, or of municipal ordinances committed within a municipality, shall be paid monthly to the county or municipality respectively); s. 142.03, Fla. Stat. (except as provided therein, fines, forfeitures, and civil penalties for violations of Ch. 316 committed within a municipality, or infractions under Ch. 318 committed within a municipality, shall be fully paid monthly to the appropriate municipality as provided in ss. 34.191, 316.660, and 318.21); s. 34.191(1), Fla. Stat. (1996 Supp.). And see, s.316.660, Fla. Stat. (1996 Supp.), stating that "[e]xcept as otherwise provided by law, all fines and forfeitures received by any county court from violations of any of the provisions of this chapter, or from violations of any ordinances adopting matter covered by this chapter, must be paid and distributed as provided in s. 318.21."
[2] See, s. 40, Ch. 96-350, Laws of Florida, amending s.316.655, Fla. Stat. (1995), and s. 49, Ch. 96-350, Laws of Florida, which added the language currently contained in s.318.21(10), Fla. Stat. (1996 Supp.).
[3] See, Florida Birth-Related Neurological Injury CompensationAssociation v. Florida Division of Administrative Hearings,686 So.2d 1349 (Fla. 1997) (where Legislature has not defined words used in a phrase, the language should usually be given its plain and ordinary meaning).
[4] Webster's Third New International Dictionary 148 (unabridged ed. 1981).
[5] See, e.g., ss. 20.21(1)(e) (automation of all information systems), 98.391 (automation of processing elector registration), Fla. Stat.; and see, ss. 17.11(2) (automated management accounting subsystem); 39.058(4)(p) (automated tracking system for serious or habitual juvenile offenders); 943.325(4)(a) (Department of Law Enforcement to establish an automated DNA identification system), Fla. Stat. Cf., Op. Att'y Gen. Fla. 97-50 (1997), concluding that the term "automated vending machine" refers to a mechanized, automated operation whereby goods or services are transferred to an individual with no need for human interaction or personal input on behalf of the one who is providing the goods or services at the time they are delivered.
[6] See, Senate Staff Analysis and Economic Impact Statement on CS/SB 892 (dated March 6, 1996, as revised March 21, 1996, and March 25, 1996), stating that section 318.21 is amended with "[p]rovisions directing the clerks of the court on the distribution to municipalities, special improvement districts, and the county, which were deleted from s. 316.655, F.S., are reinstated in this section."